Kinsey C. J.
The case not having been argued before the court, and the points for which the parties respectively contend not having been suggested by the counsel, we are left to suppose that the question submitted to our consideration, is, whether the first mortgage to Watson is void, as against Low, not having been recorded.
The act of 20th June 1765, (a) which is the first that gave a preference to a mortgage recorded, over one which is not recorded, appears from the preamble to have been designed to remedy two evils, — first-, to secure purchasers of lands mortgaged without notice: — second, subsequent mortgages without notice. It therefore enacts that mortgages made after that date should be recorded; and that if any person after the 1st of January 1776 should mortgage to two or more, the preference should be given as they were respectively recorded.
By the act of lith of November 1786 which recites that the foregoing act had not answered all the good purposes intended, as persons continue to receive mortgages, and neglect putting them on record, and that others purchasing the premises are by this means injured; — it is provided — that no mortgage thereafter made should affect a purchaser bona fide9 unless put on record in 30 days after its execution, and that mortgages heretofore given shall have no effect in law or *275 equity, against any person (except the mortgagor) unless recorded under the act of 1765 or before the 1st of May 1787.
The general question is, whether Watson's mortgage dated in 1760, not having been registered under the act of 1765, or within the time prescribed by the act of November 1786 is void as-against Cornelius Low's mortgage oí September 1765 which was recorded.
We think it clear that the act of 1765 was not intended to have, nor do the terms employed require us to give it any retroactive operation, so as to affect mortgages which had been previously executed; and we are also of opinion that the act of 1788 does not affect the priority of Watson’s mortgage.
For 1st the act of 1788 making antecedent mortgages void in law and equity if not recorded before the 1st of May 1787, avoids them only as against purchasers, and leaves subsequent mortgages as before.
The act of 1765 in its preamble, mentions mortgagees and purchasers without notice; but in its provisions it gives no security to purchasers, but merely determined the priority of mortgages. Then comes this act of 1786 which recites the evil of unregistered mortgages to purchasers only, and in the 1st section enacts, that no mortgage thereafter made shall affect a bona jide purchaser, unless recorded within 80 days from the time of its execution. The second section enacts^ that mortgages heretofore made, should not avail against any person (except the mortgagor) unless &c. It appears to be supposed by the counsel for the plaintiff in this case that as mortgages unregistered by the 1st of May 1787 are thus made void as against any person,” that it will be so, as well against Low the second mortgagee as against a purchaser. But we are of opinion that the words “ any person,” here used, mean only such persons as were previously mentioned in the preamble or the preceding section of the act. The doctrine which wre have mentioned is fully laid down in Plowden 204, in the case of Stradling v. Morgan, in 4 Inst. 330. Leach 243. that though statutes are worded generally, yet if the intent is particular, they are to be construed particularly,, Jones 422, 423. 1 Bl. Com. 87. general words, shall *276 never be carried farther than the plain design of the. k ¡ .- ture. This act, strictly speaking, is Expost facto (a) wl i • u- 11 t r . 1 , . 1 being highly penal, so far as it respects precedent mr ^ ,- p. :s, should not be extended beyond its manifest design.
2d We are of opinion that Watson’s mortgage of ■' not coming within the act of 1765 which first required . • ges to be recorded, does not come within the act of 173 which was made with a reference to the first act, and purports merely to extend its provisions, without enlarging its operation. Neither of these acts can, as we conceive, be made to have effect upon mortgages executed prior to the date of the first; and although the latter speaks generally of mortgages heretofore given, yet it can only intend to include those which ought to have been recorded under the act of 1765, and not those which, being of prior date, stood upon ground altogether different.
$d Again, we consider the bond, warrant, and mortgage to Watson as constituting collectively one act or deed 5 Burr. 2787. Per Lord Mansfield in the case of Vaughan Ex-dem. Atkins v. Atkins. The judgment, execution, and sale to Goldtrap in 1772 was intended to make the estate absolute, which by the mortgage was defeasible. The possession of Goldtrap ever since, for near if not quite 20 years, with the acquiescence of the lessors of the plaintiff, prevents the urging of any of those inconveniences which it was the design of the acts of 1765 and 1786 to avoid. If the cause had come on before a jury under these circumstances, I should have directed them that they ought to presume that Low the second mortgagee, had notice of Watson’s mortgage when he took his own.
On the whole case then, I cannot allow myself to suppose the mortgage of 1760, followed by such notorious acts, ought to be considered as void against the mortgage of 1765 not followed by any except that of having it recorded^ nor do we conceive that an ejectment can be supported under such circumstance?, by the second mortgagee against the first.
Judgment of nonsuit.

 Allinson’s i,aws, 279.

 Note See Dash v. Van Kleeck 7 Johns. 477. Calder v. Bull 3 Dall. 386. Debates in Virg. Convention 339 on the meaning of the term Expost facto in the Constitution of the U. States.'